U. S. Department of Justice

*United States Attorney*
*Northern District of Iowa*

*111 Seventh Avenue, SE*
*Box 1*
*Cedar Rapids, IA 52401-2101*

*319-363-6333*
*319-363-1990 (fax)*
*319-286-9258 (tty)*

October 25, 2019

Andrea D. Mason
Eric D. Tindal
Keegan, Tindal, & Mason
2322 E. Kimberly Road
Suite 140S
Davenport, IA 52807

Re: *United States v. Carl Willliam Stuber, IV*, 19-CR-0081

Dear Ms. Mason:

This letter will serve as a SECOND memorandum of a proposed plea agreement between the United States Attorney's Office for the Northern District of Iowa and Carl Willliam Stuber, IV, defendant. All references to the "United States" or "government" in this proposed plea agreement refer to the United States Attorney's Office for the Northern District of Iowa and to no other governmental entity. This plea offer will expire on November 4, 2019, unless otherwise extended by the government.

## CHARGES AND PENALTIES

1. CWS Defendant will plead guilty to Counts 2 and 3 of the Superseding Indictment filed on September 25, 2019. Counts 2 and 3 charge transmitting a threatening communication in interstate commerce, in violation of 18 U.S.C. § 875(c).

2. CWS Defendant understands that Count 2 of the Superseding Indictment is punishable by the following maximum penalties: (1) not more than 5 years' imprisonment without the possibility of parole; (2) a fine of not more than $250,000; (3) a mandatory special assessment of $100; and (4) a term of supervised release of up to 3 years.

3. CWS Defendant understands that Count 3 of the Superseding Indictment is punishable by the following maximum penalties: (1) not more than 5 years' imprisonment without the possibility of parole; (2) a fine of not more than $250,000;

Government Exhibit 1 Case 19-CR-00081

(3) a mandatory special assessment of $100; and (4) a term of supervised release of up to 3 years.

4. CWS Defendant understands restitution and a term of supervised release following incarceration may be imposed in addition to any other sentence. Defendant further acknowledges that, if defendant violates, at any time, any condition of supervised release, defendant could be returned to prison for the full term of supervised release and the Court is not required to grant credit for any amount of time defendant may have successfully completed on supervised release. Defendant also understands the U.S. Sentencing Guidelines will provide advisory guidance to the Court in determining a sentence in this case.

5. CWS At the time the guilty plea is entered, defendant will admit that defendant is guilty of the charges specified in Paragraph 1 of this agreement. After sentencing, the government will move for dismissal of any remaining counts. The U.S. Attorney's Office for this District will file no additional Title 18 threat-related criminal charges based solely upon information now in our possession. If this office becomes aware of evidence of additional crimes warranting criminal prosecution, all information in our possession could be used in such a prosecution.

6. CWS Defendant understands and agrees defendant has the absolute right to plead guilty before a United States District Court Judge. However, if convenient to the Court, defendant agrees to waive and give up this right and to plead guilty before a United States Magistrate Judge. Defendant understands defendant will not be found guilty unless the United States District Court Judge accepts the plea of guilty or adopts a recommendation of the Magistrate Judge to accept such plea. Defendant agrees to execute the attached consent to proceed before the United States Magistrate Judge.

7. CWS Defendant understands and agrees that, consistent with the provisions of 18 U.S.C. § 3143, defendant may be detained pending sentencing. This is regardless of whether a U.S. Magistrate Judge or U.S. District Court Judge presides at the guilty plea hearing and regardless of whether the guilty plea is immediately accepted or formal acceptance is deferred until a later date.

**NON-COOPERATION**

8. CWS Defendant understands and concedes that, although defendant is not required by the terms of this plea agreement to testify before any Court or grand jury, the United States may take the prescribed actions under 18 U.S.C. § 6001, *et. seq.* or any other applicable provision of law to compel defendant's

testimony. Defendant agrees that, if defendant refuses to testify after being granted immunity and ordered by the Court to testify, defendant may be found to be in contempt of court and may be punished in accordance with Federal Rule of Criminal Procedure 42 and 18 U.S.C. §§ 401 and 402. Further, the United States Attorney's Office shall be permitted to pursue any other action available to require defendant's testimony or punish defendant's refusal to testify subsequent to any order requiring defendant to testify. Defendant understands and agrees that, because defendant is not cooperating with the government, the United States will not recommend any decrease under §5K1.1 or any other provision of the United States Sentencing Guidelines or under 18 U.S.C. § 3553(e) or any other provision of law.

## STIPULATION OF FACTS

9. CWS By initialing each of the following paragraphs, defendant stipulates to the following facts. Defendant agrees these facts are true and may be used to establish a factual basis for defendant's guilty plea, sentence, and any forfeiture. Defendant has been advised by defendant's attorney of defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Defendant waives these rights and agrees this stipulation may be used against defendant at any time in any proceeding should defendant violate or refuse to follow through on this plea agreement, regardless of whether the plea agreement has been accepted by the Court. Defendant agrees that the stipulation below is a summary of the facts against defendant and does not constitute all of the facts the government would be able to prove at trial and may be able to prove to the Court in accordance with this agreement.

CWS A. Defendant has been the beneficiary of a trust, Sophie Stuber Trust #2, since approximately 1994. Defendant's father, C.S., is the beneficiary of a similar but separate trust.

CWS B. The trustee of the trust was originally Guaranty Bank. Cedar Rapids Bank & Trust acquired Guaranty Bank in 2017. At that time, Cedar Rapids Bank became the trustee of defendant's trust. Cedar Rapids Bank & Trust is a financial institution located in Cedar Rapids, Iowa in the Northern District of Iowa.

CWS C. Defendant resided in Colorado from at least October 25, 2018, until June 24, 2019.

According to discovery materials,

D. On October 26, 2018, a Cedar Rapids Police Department officer responded to a call from Cedar Rapids Bank & Trust regarding harassment. S.M., a bank employee, reported that defendant was calling the bank repeatedly.

E. On October 25, 2018, defendant called Cedar Rapids Bank & Trust approximately fourteen times. On October 26, 2018, defendant called Cedar Rapids Bank & Trust approximately thirteen times. During these calls, defendant spoke with bank employees, including S.M., T.B., H.H., and S.K. Defendant shouted, was verbally abusive, and made a number of threatening statements during these calls. The calls generally occurred when defendant was stressed and wanted more money from the trust.

F. Defendant made the following statements, among others, to S.M. during a series of telephone calls on October 25 and/or October 26, 2018: Defendant was going to "Columbine" the bank, and he was going to beat S.M. up in the parking lot. Defendant knowingly sent these communications or messages containing threats to injure another person in interstate commerce. The recipient of these communications was located in the Iowa, and defendant was outside the state of Iowa. Defendant sent these communications for the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat.

G. Defendant made the following statements, among others, to T.B., S.K., and/or H.H. during a series of phone calls on October 25 and/or October 26, 2018: Defendant was going to drive to Iowa, kill them, go crazy on them; he was going to call the fire and police departments and say T.B., S.K., and/or H.H. had guns; and he was going to drive to the bank and physically harm T.B., S.K., and/or H.H. Defendant knowingly sent these communications or messages containing threats to injure another person in interstate commerce. The recipients of these communications were located in the Iowa, and defendant was outside the state of Iowa. Defendant sent these communications for the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat.

H. On October 26, 2018, defendant called the Cedar Rapids Fire Department ("CRFD") and reported a structure fire at Cedar Rapids

Bank & Trust. Fire department emergency vehicles responded to the bank and then determined that the call was false.

CWS I. According to discovery materials, after the October 25 and 26, 2018 calls, Cedar Rapids Bank & Trust reached out to a victim specialist to give a presentation to its employees, particularly the employees who had spoken to defendant.

CWS J. According to discovery materials, at some point, Cedar Rapids Bank & Trust put into place a special recording system in response to defendant's calls. Using this system, some of defendant's calls could be routed to a voicemail and recorded. The bank put this system into place at its own expense.

____K. [intentionally left blank]

CWS L. Defendant continued to call Cedar Rapids Bank & Trust. On November 21, 2019, defendant left a voicemail during which he said, "I will fucking kill you all." Defendant knowingly sent this communication or message containing a threat to injure another person in interstate commerce. The recipient of this communication was located in the Iowa, and defendant was outside the state of Iowa. Defendant sent this communication or message for the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat.

CWS M. On January 16, 2019, defendant called the bank and spoke with K.S. During the phone call, defendant said, "I swear to God that I will come back to Iowa, break the bomb restraint and blow you all to hell!" Defendant knowingly sent this communication or message containing a threat to injure another person in interstate commerce. The recipient of this communication was located in the Iowa, and defendant was outside the state of Iowa. Defendant sent this communication or message for the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat.

CWS N. On January 16, 2019, defendant sent twenty-six text messages to his father, C.S., located in the Northern District of Iowa. During these text messages, defendant stated:

> $106,000 is what I lost that's what you're going to give me today if you never want to hear from me again and you can sit there and not believe my word and say all that b******* that you always say but if you don't get me that from the bank or out your bank account because y'all m************ just let people walk over and steal from and y'all don't protect f****** money and you don't protect your son you're going to have the biggest most baddest God damn problem you ever fukin had in your f****** life you piece of s*** I swear to God I will haunt you every second every day I will haunt you from a jail cell I will haunt you from a f****** bums house I don't give a fuk where I am but you will be on my mind for the rest of your f****** life and I will never let it go I swear to God so if your f****** money matters more than you're [sic] f****** piece of mind then you go ahead and be a stingy bastard and don't can do [sic] what's right and I will f****** bother you forever every second I'm going to start putting f****** people on your battery topper page on your businesses.
>
> . . . .
>
> U o me nowor els [sic] . . . I swear to God no one's going to want to be around you no one's going to want to buy one battery topper from your ass ever again be cause [sic] I'm going to ruin everything like you did to me.

CWS O. Defendant knowingly sent these messages on January 16, 2019, containing a threat to injure the property or reputation of another person. Defendant sent the messages in interstate commerce. The recipient of these messages was located in the Iowa, and defendant was outside the state of Iowa. Defendant sent the messages with the intent to extort money from a person.

CWS P. On June 6, 2019, defendant sent two text messages to his father, C.S., located in the Northern District of Iowa. The text messages said: "When I get out of prison, I'm going to kill you." "Ur dead." Defendant knowingly sent these messages containing threats to injure another person in interstate commerce. The recipient of these

communications was located in the Iowa, and defendant was outside the state of Iowa. Defendant sent these messages for the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat.

CWS Q. On June 6, 2019, defendant called Cedar Rapids Bank & Trust and spoke with R.S. During the phone call, defendant said:

> I swear to God I'm a dead man if I don't get my car back because I'm gonna fucking go Columbine. I swear to God. . . . I need my car. Or I'm going to go kill my father. On God dog, I'm gonna kill that nigga. . . . I'm telling you, if I can't get to court, I'm coming to Iowa. And I ain't coming to the bank, I'm going to my dad's house to fucking get revenge. . . . I'm gonna kill every cop I see! If I don't get my shit. . . . I will fucking kill everyone! I'm not playing. You can press charges. Put a fucking restraining order. I don't fucking care no more. People are gonna fucking die if I don't get my shit.

CWS R. Defendant knowingly sent this communication or message on June 6, 2019, containing a threat to injure another person in interstate commerce. The recipient of this communication was located in the Iowa, and defendant was outside the state of Iowa. Defendant sent this communication or message for the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat.

CWS S. On June 17, 2019, defendant called Cedar Rapids Bank & Trust and spoke with R.S. During the phone call, defendant said:

> I'm about to go to Atlanta and just start stabbing people! Like for real, like I'm sick of this shit. . . . But if I don't pay this bond, I'm not going to court at 1:30. And I'm going to skip town, and I'm going to fuck shit up . . . . I swear to God. I swear to God, . .
>
> If my bond is not paid in Adams before then, I ain't going to court. I'm skipping town and I'm gonna, and you should . . . .

> probably be in fucking fear. Not for you but for my father probably. I'll prob—he should be in—I'm gonna flip. On everyone who ever fucking did anything wrong to me.
>
> . . . .
>
> I can't do shit. I'm gonna lose everything going to jail. I can't do that. I can't do that. And if I fucking don't go to court today, I'm flippin'. I'm gonna throw my life away, I'm gonna make sure that the police drop my ass dead. Y'all don't have to take me seriously. I know I'm serious. Like I'm for real. . . . I'm gonna leave, I'm gonna run, but I'm only running to go on a killing spree. I'm gonna go on a killing spree, if I can't get the fucking bond paid. Because everybody let me drown. My dad let me drown. I'm gonna kill that motherfucker! I'm sick of shit!

CWS T. Defendant knowingly sent this communication or message containing a threat to injure another person in interstate commerce. The recipient of this communication was located in the Iowa, and defendant was outside the state of Iowa. Defendant sent this communication or message for the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat.

CWS U. On June 17, 2019, defendant sent approximately thirty Facebook messages to his mother, A.E. Within these messages, defendant stated:

> Dara dead so is Ashley I'm going to ATL to night to finish all this off Dara say she pregnant with my baby I'm make by the time I get shot by the police in Atlanta you don't have a living grandbaby I appreciate you my father Dora Ashlee and everybody for abusing me mentally to this point in my life but I'm going to Georgia tonight and I'm going to drop s*** like it's hot and I'm going to do what I said I was going to do cuz y'all think that this s*** is a joke and I hope y'all f****** lose what's y'all took from me it was never the problem only people that are living is problems I just want to dies at this point but before I die I'm going to make sure that y'all don't have anything to remember me by on this Earth hope the cops get me before I get them
>
> If you call the cops it'll make it worse maybe you should call daughter and stop telling her to run away with my fetus or stop lying to me telling me she you know I will go down there but this time there's no

> terroristic threat charges if you ever snitch on me mother I'll take your life to I swear on ever
>
> ...
>
> CNN or Fox and I'll make all of us Famous by tomorrow goodnight you raise the horrible son I am the devil and I'm going to do the devil's work as my last piece of work I'm going to make sure that I carve my pain on people's faces for the rest of their life they will live in the fear that I'm going to be coming back from the dead the way I'm going to f****** murder s*** when I get there tonight and I better be able to do it is there any cage that can keep me away from none of y'all you f****** cowards all you're cowards every single one of you f****** tell my dad he's a dead man
>
> ...
>
> It's not a threat I put this on my grandparents graves in kids graves that you'll be burying if that girl don't call me or pick up the phone
>
> ...
>
> All she had to do is pick up see y'all in hell i killed the dogs

___V. [intentionally left blank]

W. [intentionally left blank]

CWS X. Defendant's conduct involved more than two threats.

**SENTENCING PROVISIONS**

10. CWS Defendant understands and agrees to be sentenced based on facts to be found by the sentencing judge by a preponderance of the evidence and agrees

facts essential to the punishment need not be (1) charged in the Superseding Indictment; (2) proven to a jury; or (3) proven beyond a reasonable doubt. The Court may also consider other information concerning the background, character, and conduct of defendant.

11. CWS During plea negotiations the parties may have discussed how various factors could impact the Court's sentencing decision and the determination of the advisory sentencing guidelines range. The parties agree, however, that discussions did not result in any express or implied promise or guarantee concerning the actual sentence to be imposed by the Court. Defendant understands the Court is not bound by the stipulations of the parties, nor is it bound by the sentencing range as determined pursuant to the sentencing guidelines. This plea agreement provides for no guarantee concerning the actual sentence to be imposed. Defendant further understands defendant will have no right to withdraw defendant's guilty plea if the sentence imposed is other than defendant hoped for or anticipated.

12. CWS The parties stipulate and agree the United States Sentencing Guidelines should be applied, at least, as follows:

CWS A. **Base Offense Level – Threatening Communications (Chapter 2):** For Counts 2 and 3, pursuant to USSG §2A6.1, the appropriate base offense level is **12**.

CWS B. **Intent to Carry Out (Specific Offense Characteristic):** Defendant understands the United States is free to present evidence and arguments to support a **six-level** upward adjustment under USSG §2A6.1(b)(1) based on defendant's conduct evidencing an intent to carry out such threat.

CWS C. **More than Two Threats (Specific Offense Characteristic):** A **two-level** upward adjustment is appropriate under USSG §2A6.1(b)(2) based on defendant's conduct involving more than two threats.

CWS D. **Substantial Disruption of Functions or Services (Specific Offense Characteristic):** Defendant understands the United States is free to present evidence and arguments to support a **four-level** upward adjustment under USSG §2A6.1(b)(4).

CWS E. **Departure – Multiple Threats, Victims:** Defendant understands the United States may seek an upward departure under USSG §2A6.1, comment. (n.4(B)).

CWS F. **Acceptance of Responsibility (Chapter 3 adjustment):** The United States agrees for purposes of USSG §3E1.1(b) that defendant timely notified authorities of defendant's intention to enter a guilty plea. However, the United States may withhold a motion under USSG §3E1.1(b) based on any interest identified in USSG §3E1.1 or the commentary thereto.

CWS G. **Criminal History (Chapter 4):** No agreement has been reached regarding defendant's criminal history. The parties reserve the right to contest the Probation Office's determination of defendant's criminal history and criminal history category under Chapter Four of the sentencing guidelines. In addition, defendant understands that, if defendant's criminal history would result in a higher base offense level under any guideline, the government is free to seek such a base offense level.

CWS H. **Departure - USSG §5K1.1 and 18 U.S.C. § 3553(e):** The United States will not make a motion for downward departure under §5K1.1 or any other provision of the United States Sentencing Guidelines or under 18 U.S.C. § 3553(e) or any other provision of law.

CWS I. No other agreements have been reached, and the parties are free to litigate any and all other applicable adjustments, departures, or cross-references under the United States Sentencing Guidelines, and any variances of any kind from the advisory guideline range, in any amount, in either direction.

13. CWS Defendant, defendant's attorney, and the United States may make whatever comment and evidentiary offer they deem appropriate at the time of the guilty plea, sentencing, or any other proceeding related to this case, so long as the offer or comment does not violate any other provision of this agreement. The parties are also free to provide all relevant information and controlling authority to the Probation Office and Court for use in preparing and litigating adjustments, enhancements, or departures scored in the presentence report, including offering statements made by defendant at any time.

14. CWS The parties are free to contest or defend any ruling of the Court, unless otherwise limited by this agreement, on appeal or in any other post-conviction proceeding.

15. CWS Defendant understands that, pursuant to the Victim and Witness Protection Act, Title I of the Justice for All Act, and the regulations promulgated under the Act by the Attorney General of the United States:

A. The victim of a crime is given the opportunity to comment on the offense and make recommendations regarding the sentence to be imposed. Defendant understands the victim's comments and recommendations may be different from those of the parties to this agreement.

B. The government is required to consult with victims of serious crimes to obtain their views regarding the appropriate disposition of the case against defendant and to make any such information regarding sentencing known to the Court. Defendant understands any victim's opinions and recommendations may be different from those presented by the government.

C. The government is required to "fully advocate the rights of victims on the issue of restitution unless such advocacy would unduly complicate the sentencing proceeding," and the Court is authorized to order restitution by defendant to victims of crime, including, but not limited to, restitution for property loss, personal injury, or death.

## CONDITIONS OF SUPERVISION

16. CWS If probation or a term of supervised release is ordered, the parties are free to seek whatever conditions they deem appropriate.

## FINANCIAL MATTERS

17. CWS Defendant agrees to pay a special assessment of $100 per count, for a total of $200, as required by 18 U.S.C. § 3013. Defendant may pay the special assessment to the Clerk of Court using the enclosed payment coupon. Defendant or defendant's representative will send or deliver the special assessment payment to the U.S. District Clerk of Court, 111 Seventh Avenue, SE, Box 12, Cedar Rapids, IA 52401. If payment is made in the form of a check or money order, it should be made out to the "U.S. District Clerk of Court."

18.CWS Defendant agrees that defendant will be required to pay restitution for the full amount of the victims' losses to all victims of the offense(s) to which defendant is pleading guilty pursuant to any applicable restitution statute. In addition, defendant agrees that defendant will pay restitution for the full amount of the victims' losses to all victims of any offense(s) dismissed as a result of this plea agreement. Defendant agrees that the victims entitled to restitution include but are not limited to the following: Cedar Rapids Bank & Trust; Cedar Rapids Bank & Trust employees, including but not limited to S.M., T.B., S.K., H.H., and K.S.; D.G.; A.V.; C.S.; K.L.; A.E.;

For purposes of this paragraph, the term "victim" includes both statutory victims and persons directly and proximately harmed as a result of the conduct outlined in this paragraph; defendant agrees to pay restitution to non-statutory victims pursuant to 18 U.S.C. §§ 3663 and 3663A. Defendant further understands the amount of loss sustained by each victim will be investigated during the course of preparation of the presentence investigation report. Defendant agrees to cooperate in the investigation of the amount of loss and the identification of victims. Defendant agrees that full restitution will be ordered regardless of defendant's financial resources. Defendant reserves the right to challenge itemized claims of restitution to the agreed-upon victims if such claims are not compensable under the restitution statutes.

19.CWS Defendant understands and agrees that, under 28 U.S.C. § 1918(b), the Court may order defendant to pay the costs of prosecution in this case. Defendant understands the United States will file a final bill of costs at the conclusion of the prosecution. Defendant agrees to pay the costs incurred by the government in the prosecution of this case, as will be reported in the final bill of costs.

20.CWS Defendant agrees to fully complete the enclosed Authorization to Release Credit Information pursuant to 15 U.S.C. § 1681b(a)(2). Further, upon request, defendant agrees to provide the U.S. Attorney's Office with any supporting information or documentation in defendant's possession or control regarding the information contained in the consumer credit report. In addition, defendant agrees to take any additional action requested by the United States to obtain financial information about defendant in the hands of third parties. This request includes, but is not limited to, mortgages, financial statements, loan applications or requests for extension of credit, financing statements, security agreements, subordinations, promissory notes, account information, tax returns, W2s, child support obligations, and any other document that may be held by a third party containing financial information about defendant. Defendant agrees to provide this information whenever requested until such time any judgment or claim against defendant, including principal, interest, and penalties, is satisfied in full. This information will

be used to evaluate defendant's capacity to pay any claim or judgment against defendant as well as satisfy any forfeiture obligations. Defendant further understands and agrees the United States can and will release such information to the United States Probation Office for the Northern District of Iowa.

21.CWS Defendant agrees to fully and truthfully complete the enclosed financial statement form. Further, upon request, defendant agrees to provide the U.S. Attorney's Office with any information or documentation in defendant's possession or control regarding defendant's financial affairs and agrees to submit to a debtor's examination when requested. Defendant agrees to provide this information whenever requested until such time any judgment or claim against defendant, including principal and interest, is satisfied in full. This information will be used to evaluate defendant's capacity to pay any claim or judgment against defendant.

## GENERAL MATTERS

22.CWS Defendant shall not violate any local, state, or federal law during the pendency of this agreement. Any law violation, with the exception of speeding or parking violations, committed by defendant will constitute a breach of this agreement and may result in the revocation of the entire agreement or any of its terms. Defendant or defendant's attorney shall notify this office within 48 hours if defendant is questioned, charged, or arrested for any law violation.

23.CWS If defendant violates **any** term or condition of this plea agreement, in **any** respect, the entire agreement will be deemed to have been breached and may be rendered null and void by the United States. Defendant understands, however, the government may elect to proceed with the guilty plea and sentencing. These decisions shall be in the sole discretion of the United States. If defendant does breach this agreement, defendant faces the following consequences: (1) all testimony and other information defendant has provided at any time (including any stipulations in this agreement) to attorneys, employees, or law enforcement officers of the government, to the Court, or to the federal grand jury may and will be used against defendant in any prosecution or proceeding; (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against defendant and to use any information obtained directly or indirectly from defendant in those additional prosecutions; and (3) the United States will be released from any obligations, agreements, or restrictions imposed upon it under this plea agreement.

plea agreement; (2) if the sentence imposed exceeds the maximum statutory penalty; and (3) if the sentence is constitutionally defective. This waiver does not, however, prevent defendant from challenging the effectiveness of defendant's attorney after conviction and sentencing. Defendant does not have any complaints at this time about the effectiveness of defendant's attorney. The waivers set out above relate to any issues that now exist or that may arise in the future. Defendant agrees to these waivers in order to induce the government to accept the provisions and stipulations of this plea agreement, to avoid trial, and to have defendant's case finally concluded. Defendant understands that, at the conclusion of the sentencing hearing, the Court will note defendant's appeal rights are limited by this waiver. No assurances or promises have been made by any party as to what defendant's ultimate sentence will be.

## ACKNOWLEDGMENT OF DEFENDANT'S UNDERSTANDING

27. CWS Defendant acknowledges defendant has read each of the provisions of this entire plea agreement with the assistance of counsel and understands its provisions. Defendant has discussed the case and defendant's constitutional and other rights with defendant's attorney. Defendant understands that, by entering a plea of guilty, defendant will be giving up the right to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in defendant's defense; to remain silent and refuse to be a witness by asserting defendant's privilege against self-incrimination; and to be presumed innocent until proven guilty beyond a reasonable doubt. Defendant agrees defendant's attorney has represented defendant in a competent manner and has no complaints about that lawyer's representation. Defendant states defendant is not now on or under the influence of, any drug, medication, liquor, or other substance, whether prescribed by a physician or not, that would impair defendant's ability to fully understand the terms and conditions of this plea agreement.

28. CWS Defendant acknowledges that prior plea offers including that dated October 24, 2019, have expired or been rejected. Defendant agrees defendant was notified of the plea offer and defendant had a full and complete opportunity to discuss this offer with defense counsel prior to the expiration or rejection date.

29. CWS Defendant acknowledges defendant is entering into this plea agreement and is pleading guilty freely and voluntarily because defendant is guilty and for no other reason. Defendant further acknowledges defendant is entering into this agreement without reliance upon any discussions between the government and defendant (other than those specifically described in this plea agreement), without promise of benefit of any kind (other than any matters contained in this plea

24. CWS Defendant waives all claims defendant may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment to the Constitution. Defendant also agrees any delay between the signing of this agreement and the final disposition of this case constitutes excludable time under 18 U.S.C. § 3161 et seq. (the Speedy Trial Act) and related provisions.

25. CWS Any dismissal of counts or agreement to forego filing charges is conditional upon final resolution of this matter. If this agreement is revoked or defendant's conviction is ultimately overturned, the United States retains the right to reinstate previously dismissed counts and to file charges that were not filed because of this agreement. Dismissed counts may be reinstated and uncharged offenses may be filed if: (1) the plea agreement is revoked, or (2) defendant successfully challenges defendant's conviction through a final order in any appeal, cross-appeal, habeas corpus action, or other post-conviction relief matter. A final order is an order not subject to further review or an order that no party challenges. The United States may reinstate any dismissed counts or file any uncharged offenses within 90 days of the filing date of the final order. Defendant waives all constitutional and statutory speedy trial rights defendant may have. Defendant also waives all statute of limitations or other objections or defenses defendant may have related to the timing or timeliness of the filing or prosecution of charges referred to in this paragraph.

## WAIVER OF APPEAL

26. CWS After conferring with defendant's attorney and after being advised of defendant's appeal rights, defendant knowingly and voluntarily waives defendant's right to appeal the conviction and the sentence imposed. Defendant also waives the right to file post-conviction relief actions, including actions pursuant to 28 U.S.C. § 2255, 28 U.S.C. § 2241, *coram nobis*, and motions to reconsider or reduce defendant's sentence. Should the United States Sentencing Commission and/or Congress in the future amend the Sentencing Guidelines to lower the guideline range that pertains to defendant's offenses and explicitly make such an amendment retroactive, the government agrees that it will not assert this waiver as a bar to defendant filing a motion with the district court pursuant to 18 U.S.C. § 3582(c)(2). However, if defendant files such a motion, the government reserves the right to oppose the motion on any other grounds, and it reserves the right to assert this waiver as a bar to an appeal from the district court's decision regarding the motion. Defendant retains the right to appeal or contest defendant's sentence in the following limited circumstances: (1) if the sentence is not in accordance with this

agreement), and without threats, force, intimidation, or coercion of any kind. Defendant further acknowledges defendant's understanding of the nature of each offense to which defendant is pleading guilty, including the penalties provided by law.

30. CWS Defendant further understands defendant will be adjudicated guilty of each offense to which defendant will plead guilty and will thereby be deprived of certain rights, including, but not limited to, the right to vote, to hold public office, to serve on a jury, and to possess firearms and ammunition. Defendant understands the government reserves the right to notify any state or federal agency by whom defendant is licensed, or with whom defendant does business, of the fact of defendant's conviction.

## VERIFICATION

31. CWS This letter constitutes the entire agreement between the parties. No other promises of any kind, express or implied, have been made to defendant by the United States or its agents. No additional agreement may be entered into unless in writing and signed by all parties. The agreement will not be deemed to be valid unless and until all signatures appear where indicated below.

If this agreement is acceptable, please have your client indicate acceptance by placing initials on the line preceding each of the above paragraphs and by signing below where indicated. By initialing each paragraph and signing below, defendant acknowledges defendant has read, fully understands, and agrees to each paragraph of this agreement. Please return all enclosures, completed and signed, with this signed letter to the U.S. Attorney's Office.

Please complete the enclosed Consent to Proceed Before the Magistrate Judge. This document is needed to allow the Magistrate Judge to receive defendant's guilty plea.

Finally, please remember to pay the special assessment as agreed above.

Thank you for your cooperation.

Sincerely,

PETER E. DEEGAN, JR.
United States Attorney

By, */s/ Kyndra Lundquist*

KYNDRA LUNDQUIST
Assistant United States Attorney

**ENCLOSURES:**
Financial Statement Form
Special Assessment Payment Coupon
Abandonment Declaration
Authorization to Release Credit Information
Consent to Proceed Before Magistrate Judge

The undersigned defendant, with advice of counsel, accepts the terms of this plea agreement. The undersigned Assistant United States Attorney accepts the terms of the executed plea agreement.

11/02/19

CARL WILLIAM STUBER IV — Date
Defendant

11/4/19

KYNDRA LUNDQUIST — Date
Assistant United States Attorney

11/2/19

ANDREA D. MASON — Date
Attorney for Defendant